MVP Health Plan v. Optum Insight Roberta Kaplan for Appellant MVP Although we recognize and I think share some blame for the fact that the briefing in this case is quite large, there's a lot of facts and issues, what I'd like to do today, if Your Honors will permit, is to focus on two issues in the case in which I think there are very, very obvious and clear issues of law, errors of law, excuse me. The first error relates to how the district court assessed damages for breach of contract. Specifically, the trial judge concluded that the only recoverable damages in this case was the $330,000 fee paid for services under the contract, rather than the $12 million in lost revenues, even though she also concluded that the $12 million was directly caused by the breach. The district court reached that result by first concluding that the $12 million did not constitute general damages, and then by concluding that it was not recoverable as we focus today on the consequential damages holding. In so doing, the district court hearkened back, this is a bit of like a law school class here, Your Honors, to the old law line of common law cases, epitomized by Justice Holmes and Glober Feiningko, that for consequential damages to be awarded, the defendant must have tacitly agreed to pay such damages in case of breach. That, however, is not the test today. Indeed, even the older case of Hadley v. Baxendale that we all studied when we were 1Ls about the crankshaft at a gristmill rejects that very strict formulation of the test. Rather, the test today, Your Honors, is one of objective foreseeability at the time of the making of the contract. In other words, was it foreseeable to Optum that the damages that MVP suffered here on the Medicare contracts would result if a breach occurred? We don't think that this is a difficult question to answer in the affirmative given the findings that the trial court made, A, that the parties had been engaged in a contractual relationship doing exactly these actuarial services since at least 2006, 2, that Optum had total control over the bid submission process, and 3, the  premium revenues that MVP would receive on the Medicare plans. The second error that we believe is quite clear in this case is Judge Kahn's dismissal of the negligent misrepresentation claim as entirely duplicative of the contract claim. But what I think I'd like to focus on at least first is consequential damages because I think this Court has to decide that issue in any event, and that if the Court does decide it, it doesn't have to reach the negligence arguments that we make. The district court held, as I said before, that the Optum's breach here of contract was the sole factual and proximate cause of MVP's lost revenue. In her words, that the negligence directly caused MVP's lost revenues. And that was a breach of contract because of the actuarial standards in the contract. Under New York law, lost revenues are recoverable as consequential damages under three circumstances, and it is limited. We can see that. One, they have to be caused by the defendant's breach. Two, they have to be capable of proof with reasonable certainty. And three, they have to be reasonably foreseen or contemplated by the parties at the time the contract was formed. The district court here found the first two elements were satisfied. Where the district court judge got hung up was on the third factor. And that's where the crucial error occurs. In so reaching the results, the district court relied on a statement of the New York Court of Appeals in Kenford one, that there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made. That's where the error occurs. What the district court said is that the Kenford one court did not mean that the parties must have contemplated the injury at the time of the contract, but rather the liability for lost profits over the length of the contract. As the court then went on to explain, the problem here is that Optimum did not agree to act as an insurer for MVP's health plan or to otherwise accept liability for losses on third party contracts. But in the Kenford two case decided by the Court of Appeals three years later about whether a plaintiff could recover consequential damages relating to the Buffalo Dome Stadium project, the Court of Appeals stressed two factors. One, whether the damages, not the liability, whether the damages were reasonably, and I'm reading directly from the case, quote, reasonably foreseen or contemplated during negotiations or at the time the contract was executed. Damages meaning the injury? Damages meaning the quantity of money? Damages could be injury or quantity of money. Here it was, the actual damage was the quantity of money, the lost revenues under the contract. And what the court, the crucial error that the court made in reaching that result is she missed the second or. Surely if the parties explicitly contemplate that one party is covering the other party for this kind of lost profit, then obviously you can get consequential damages. But the rest of the test is or reasonably foreseen. It's an objective foreseeability standard. And I would urge Your Honors to look at Farnsworth. In section 12.4 of his treatise cited by the Court of Appeals in Kenford and Ashland where he goes through the factors of objective foreseeability, every single one of those factors were met here. And the reason they were is because these parties knew exactly what the damages would be if there were a breach. The damage for not properly taking into account the cost sharing or the double counting, the failure to double count under the contract meant precisely that MVP would result, would suffer damages under their MVP contracts, which is exactly what occurred. If the court is concerned about limiting consequential damages, which I could understand the court might be considered, this is not an actuarial assumption error. It's not as if Optimum thought that women at the age of 65 are going to get more heart attacks and it turns out they get fewer heart attacks. This was an on-off switch. They knew since 2006 that we only take, my client only takes one copay for each visit by a customer. They've been operating that way and for some reason in 2013 in breach of the contract, they failed to take that into account. That's exactly the kind of reasonable certainty that gets you consequential damages. Indeed, if you look at Judge Jacob's opinion in the Traveler's case, he talks about exactly that. That was a case about a travel company in TWA. TWA had exclusive control over the arrangement and he said in those circumstances you get consequential damages for loss of profit. Let me just touch briefly, if Your Honors, if I may, on the negligent misrepresentation.  The error committed by the other trial judges, Judge Kahn at the outset of the case here, is that he improperly lumped negligent misrepresentation together with negligence and gross negligence. There are no cases, in fact, there are many cases in our brief that say to the contrary that a negligent misrepresentation claim when a special duty exists and it clearly existed here is duplicative of a breach of contract claim. Obviously, if that claim is reinstated, you would have to remand to the trial court. We think she made appropriate findings. Probably doesn't have to do anything else. But either result, obviously, will get us, rather than the $300,000, the $12 million in damage. Is the negligent misrepresentation claim different from the general negligence claim? Sure. So the negligent misrepresentation claim, Judge Radji, is a, he uses the word negligent surely, but it's a different species of tort. It arises in situations like this, where there is a special relationship between the parties, where one party has special expertise, and because of that special expertise has a duty to act. I would refer you almost to the fact that there is a duty to act. I'm just trying to understand why we would treat it as something other than duplicative of the contract. Your cases, including a decision by Judge Carter, have explicitly said over and over again that unlike negligence claims, negligent misrepresentation claims are not duplicative because they arise out of a separate duty. What's the misrepresentation you're relying on here? So there's two misrepresentations. One, there's obviously they performed the work appropriately. I agree with you that that's. That's implicit in every contract. That's closer to the contract. But here, there was a failure to disclose the fact that they hadn't properly accounted for the cost-sharing mechanism, and a failure to speak under negligent misrepresentation. The contract obliged them to do that? No. That's why it's. I'm not sure how a failure to disclose that they didn't perform the contract is a separate tort. The contract didn't. That's exactly why the negligent misrepresentation claim lies, Your Honor. And I would refer you to the J.P. Morgan case from the First Department, where the First Department said on a case against a broker who had a contract just like this for the client, that the contract, that the negligence claims were dismissed as duplicative of the contract, but that the negligent misrepresentation claims could not be dismissed because they arise out of a special duty, in that case between the broker and the customer. I would say it's incredibly close. Like actuaries, brokers have to get tests. They have to get licensed. There's no recognized claim for broker malpractice yet in the State of New York, and that's exactly the situation of the actuaries here, Your Honor. Thank you. Thank you. Good afternoon, Your Honors. I'm Carl Geerken of Olsen & Bird, and I'm here on behalf of the Appellee Optum Insight. What I'd like to do with my short amount of time, Your Honors, is focus on the issues that Appellant's Counsel has focused on. You know we have submitted a conditional cross-appeal, and we'll stand on our papers with respect to those issues, because I don't think you need to get there. I think this is a case where Judge Sanis applied well-established law to the facts of the case. And I think her determination of the facts as they deal with the consequential damages issues are important, because it was a four-day trial, and as Your Honors are aware, there was no integrated contract that Judge Sanis found to exist. It was on the basis of e-mails, communications, and conversations. So I think she's entitled to substantial deference with respect to her decision that these damages, the alleged consequential damages, were in the contemplation of the parties at the time of contracting. Were not? They were not. All right. Correct. That's where I need you to help me out. Your adversaries just explained that one of the critical features of the calculations your client did over the years was to take account of the fact that they only had one copay, and that the failure to do so here was what caused these damages. And so there was no judgment or anything else about whether you should include it or shouldn't include it and what you could have foreseen. How could your client not have foreseen that if you didn't treat these copay calculations correctly, there was going to be a significant loss to the insurer? I think that's a good question, Your Honor. And the issue is in connection with consequential damages, whether the injury is foreseeable, but that's not enough, as the case is made clear. You have to have the contemplation that the liability for those damages was in the minds of the parties at the time the contract was entered into. The Kenford Court stated this. The Ashland Management Court stated this, a case relied on by appellants. And, you know, Kenford did it in 1986, the New York Court of Appeals. Ashland Management used that same terminology. Is this in the contemplation of the parties? In fact, they took over the language used in Kenford. Did the parties contemplate that the defendant would bear the heavy responsibility? And in Kenford, it was for damages over a 20-year period. But that's the language that's picked up by Ashland in 1993, and then again in By Economy, another Court of Appeals case, in 2008. So the key question that Judge Sanis correctly focused on was what liability the defendant, Optum Insight, may fairly be said to have assumed consciously at the time the contract was made. And there was no evidence presented that Optum Insight or that the plaintiff considered that Optum would be responsible for consequential damages. This is one of those cases where it's a service provider providing services, and the damages incurred are one step removed. They're based on collateral business relationships. They're not direct damages. I take issue with my colleague about saying Optum had complete control over the bid process. Judge Sanis made clear in her decision, final approval with respect to the bid process rested with MVP, the appellant. Likewise, setting of premiums, final decisions as to the premiums that were going to be offered to the insureds rested with MVP, the appellant. And so the damages were incurred by virtue of those third-party collateral relationships. Well, based on what your actuarial assumptions were about the number of copays there would be, right? Correct. And we disputed that. To get to the argument you've just made about what the parties contemplated, there is the 2003 master agreement here which did provide that neither party would be responsible for consequential damages. That was the exact language there. And the district court did not think that it was relevant here. But let me ask you whether it is relevant, and if so, which way it cuts. I think it is relevant. I think it was excluded for purposes of our claim that that contract applied and there was a consequential damages limitation that should have been applied contractually. But could it operate the other way, that given that it doesn't govern the dealings here and you have no exclusion of the consequential damages, that in the absence of this kind of an express exclusion the parties would have contemplated that it does apply? I don't think so, Your Honor, and this is why. Please. The parties had had a relationship on a year-to-year basis, each year entering into an agreement that was to provide actuarial services, not ensuring profit vis-a-vis the plans after they had been sold, just to provide actuarial services. They were provided. Each year there was an SOW, a scope of work, that was entered into and signed. 2012, it had been prepared but wasn't signed. Each year the parties knew that consequential damages would be excluded. 2012, MVP, the appellant, Cindy Lewis, prepared an SOW that incorporated by reference the master services agreement. That includes, of course, the consequential damages limitation. That's just evidence that the parties intended that to apply. For some reason it never got signed, but the parties' contemplation was the same as it had always been. Do we know the rate at which your client was to be paid under the 2003 master agreement? I ask this because I'm wondering if there's any difference in the payment amounts or payment obligations, because sometimes that would reflect a different understanding. The party that's going to assume the risk of the damages may want to pay more or less, depending on that. Is there anything in the record on that? There is not, Your Honor, because the 2003 master agreement was a framework agreement for a bundle of services that would be provided, so they didn't set out a specific dollar amount. But the SOW did. It set out the rates that were to be applied. In this case, as in prior years, those rates were charged and paid, consistent with past practice. There was evidence on the record at the trial below that questions were whether this was a loss-share arrangement. Had that ever been discussed? Clear answer was no. This was not a loss-share arrangement. There was testimony on the record about prior experience as to whether there had been profits or losses in the past. And, indeed, there had been profits in the past, greater than anticipated profits, based on the actuarial bid that had been submitted. Optum never shared in those profits. There was never that type of discussion or contemplation. And the disparity as judge, and I see my time is coming to a close, the disparity between the contract price of $330,000 or $320,000 and the liability, the potential liability of $12 million, is so disparate that it also is an indication that the parties didn't contemplate that that liability would rest with Optum inside. It would change the whole basis for how actuaries do business. With respect to the negligence, if I can beg your indulgence, the negligence misrepresentation claims, Your Honor, and the negligence claim, they are duplicative of the agreement. The only thing we've heard different today, or we've heard virtually the same thing, is that didn't perform the services properly and didn't tell us about a new change. That's all encompassed by what was argued to be and what was alleged to be a contractual obligation, the performance of actuarial services in a non-negligent fashion consistent with the actuarial standards of practice. So there is no difference between what is being alleged as negligent misrepresentation and as breach of contract. And for that reason, Judge Kahn's decision should be dismissed, should be affirmed, rather, on that issue as well. So thank you, Your Honors. Thank you. Thank you, Mr. Geerken. Ms. Kaplan, you've reserved some time. Thank you, Your Honor. I'd just like to make a few points. First of all, we certainly agree with my friend on the other side that this Court should defer to the findings of fact by the trial judge after Ben's trial. Our appeal is not about findings of fact. It's about conclusions of law. And those, Your Honors, obviously determine de no lo. On the negligent misrepresentation point, again, I would refer, Your Honors, to the J.P. Morgan case at the First Department. The site there is 78 AD 2nd, 562, exactly on all fours with this case. The only difference is there it was a broker and here it's an actuary. Going now to the consequential damages, we certainly agree with the other side that if the parties specifically contemplate that the breaching party would be liable for a particular damage, then consequential damages can arise. But that's not the whole test. That's one way consequential damages can arise. The other way it can arise is the objective reasonable foreseeability test. Of liability. No. No, no, no. You're wrong, Your Honor, respectfully, of damages. And let me read you. Why would anybody ever negotiate, have to negotiate a contract, then? Excuse me, Your Honor? Judge Holdren? Well, it would seem to me that if what you're saying is the test, then just the mere foreseeability of the damage is enough. You'd never, there wouldn't need to be an agreement. No. There has to be reasonable certainty. They have to be calculated. And it has to be in a context where in the particular contractual relationship it's not like the crankshaft case. In the crankshaft case from law school, the crank broke. You don't know what the damages were going to be because maybe you had a spare crank, maybe you had other ways to fix it. And that's actually, that's a less liberal standard than the standard today. But we even meet that standard. We knew, anyone in this contract knew that if the contract was breached and the services were negligently performed, the damages would be the loss in revenue under the Medicare contract. What we're really dealing with almost is who should have made that clear to whom. And you, there is this 2003 master agreement which suggests that what the parties contemplated was that there would not be a responsibility for consequential damages one to the other. Everybody would bear it themselves. In the absence of anything to the contrary, why should we assume that it was foreseeable that they would be liable for damages? I actually think, with respect, Judge Radji, that the 2003 consequential damages provision in that contract cuts our way. What it meant is that the parties understood that under this relationship, this contractual relationship, there were going to be consequential damages. And the district court held findings that my friend agrees should be deferred to, that that contract did not apply here. There was no writing between the parties in which that contract applied. And what it shows actually is the opposite, that Optum knew that if there was a breach of their services, that consequential damages would happen, and that's exactly what happened here. You bore the burden on this issue at the trial, right? If you had to show that they – that it was foreseeable or that they had agreed to it, right? And we – not only did we show it, but the district court held in her findings that it was directly caused by the damage. That's different from whether it was foreseeable. But she didn't say – she didn't reach this result by saying it wasn't foreseeable. What she said is that the parties didn't contemplate that we would be liable – that we would be liable if there was liability under the contract. That's not the requirement. I would refer Your Honors to language – Excuse me. Do we need to remand this, then, to Judge Sanis for her to make that determination or – Well, that's one thing you could do. I think if you find the appropriate reasonable objectivity test, you don't need to do that. I think the findings are there. Remand would certainly be appropriate. And let me just read, if I may, and I appreciate that I'm over time, some language from Judge Jacobs from Kenford II, which is a court of appeals decision, where the contemplation of the parties, the nature, purpose, and particular circumstances of the contract known by the parties should be considered. If my friend's rule was the rule, that language in Kenford II would be completely superfluous. Well, I want to focus you on different language, and that's from the New York Court of Appeals in Bioeconomy. Yes. The standard they say there is that look to the nature, purpose, and particular circumstances of the contract, as well as what liability the parties, the defendant fairly may be supposed to have assumed consciously, that's one, or to have warranted the plaintiff reasonably to have supposed that it was assumed. So that means that what I understand the second prong of here is what facts would have warranted your client reasonably to have assumed that the defendant was assuming liability? I think the facts that would give my client that reasonable assumption was the length of the time of the contract, the fact that this has been operating since 2006, the fact that the other party had complete control over all the actuarial calculations, that it was hands-off to our party, as the district court judge found, we could do nothing to change them. The fact that they certified to Medicare that their calculations were incorrect. And the fact that we're not talking about some kind of an actuarial prediction here, we're talking about an on-off switch. They made just a very grave, very serious factual error in not taking into account the cost sharing under our contracts. When you paid for these services, did you pay a flat contract fee or were you paying an hourly rate? No, that's the problem. We paid the $300,000. That's all we got back. No, but my point is, and that wasn't based on any kind of hourly rate or anything else, that was the flat payment, whether they did it in a week or whether they did it in three months. I believe that's based on an hourly rate, Your Honor. It is an hourly rate. Yeah. Because my concern is that if a party was assuming this responsibility, you would expect that to result in some kind of an enhancement in fee to account for the risk that they were assuming. And I'm not sure that there was any evidence put before the district court that says, look, you know, to just add up numbers, people would pay X. But if you're going to assume that they're liable, given the kind of liability that could arise here, the premium would be Y, and we paid Y. So, you know, I mean, I'm just concerned about what the record of what record there is for you to assume that they were going to take that risk. Look, maybe a remand, as Judge Hall recommended, would be appropriate here. Clearly, the district court applied the wrong test. She did not apply the appropriate test. Even in bioeconomy, which Your Honor just cited, the test is the language is, it is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred. Rather, it is only necessary that loss from a breach was foreseeable and probable. And what I would respectfully submit is in a contract like this, where one party has absolute, unilateral, mathematical control over the profits and amounts charged by the other party, if there are not consequential damages under a contract like that, that kind of exclusive relationship that Judge Jacobs talked about in the Travelers case, then I would respectfully submit, Your Honors, that in no contract could anyone ever recover consequential damages, and we know that that's not the common law of the State of New York. Thank you. Thank you. Thank you both. We will reserve decision.